IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

KENNETH L.  WALLER                                                      PLAINTIFF

v.                                          Civil No.:  4:10-cv-4059

WARDEN G.  TURNER *et al.*                                              DEFENDANTS

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Kenneth L.  Waller (Plaintiff), an inmate of the Miller County Correctional Facility, in Texarkana, Arkansas, filed this case pro se and *in forma pauperis* under 42 U.S.C. § 1983.  (Docs. 1, 2).  Now before the Court is the Motion for Injunctive Relief.  (Doc.  31).  The Court has also reviewed and considered the Response to the Motion for Injunctive Relief filed by Defendant K. Williams.  (Doc.  32).

Pursuant to the provisions of 28 U.S.C.  § 636 (b)(1) and (3), this case is referred to the undersigned by the Honorable Harry F.  Barnes, United States District Judge for the Western District of Arkansas.  For the following reasons, it is the recommendation of the undersigned that the Motion for Injunction (doc.  31) be DENIED.

### I.       BACKGROUND

Plaintiff alleges in his Complaint that on March 31, presumably of 2010, he was moved from the Max Delta unit of the Miller County Correctional Facility back to the west Alpha unit on the orders of Warden Turner.  (Doc.  1, ¶ V).  Plaintiff states that west Alpha is the medical pod and he was moved there for medical reasons.  *Id.*  Officer Nash moved Plaintiff from the Max Delta unit. *Id.*  During the move, Officer Nash contacted Officer Herro *via* radio and informed Herro that Nash was moving Plaintiff.  *Id.*  However, when Officer Nash and Plaintiff arrived, Officer Herro was not

on his post, and Officer Nash placed Plaintiff into west Alpha.  *Id.*  Once placed in the new pod, Plaintiff was "attacked, assaulted, kicked, beaten, and stomped" by three inmates who are white and claim affiliation with the "Arian Brotherhood" a white gang.  (Doc.  1, ¶ V).  During this assault, Plaintiff's back was reinjured, as he already had lower back pains.  *Id.*

On March 16, 2010, Plaintiff had a fight with Ricky Sealy, one of the inmates who had assaulted him in west Alpha.  *Id.*  At that time, Plaintiff was moved to Max Delta by Officer Herro and Warden Turner.  *Id.*  The next day, March 17, 2010, Plaintiff wrote a grievance about the location where he was housed and gave that grievance to Sgt. Giles.  *Id.*

Plaintiff states he also requested medical attention after the incident on March 31, 2010, but was delayed for approximately two-and-a-half hours before he received any care.  *Id.*  Plaintiff alleges that Nurse Williams delayed providing him medical attention for several hours when he was injured in the Miller County Correctional Facility.  (Doc.  1, ¶ 6).  Plaintiff also has alleged that during his treatment by Nurse Williams, he was neither treated for open wounds on his head and lip, nor given any medication for his back pain.  *Id.*  Plaintiff indicates his back pain was so severe Nurse Williams had to take vital signs while Plaintiff was lying down, and that Plaintiff was also unable to get up to use the toilet facilities.  *Id.* at ¶ 5.  Plaintiff also states he had a prior back injury, for which he received medical treatment while in the Miller County Correctional Facility.  *Id.* at ¶ 2.

Plaintiff states he wrote grievances to Warden Turner, but those grievances were not answered.  *Id.* at ¶ 12.  Plaintiff did attach a copy of what he states is the most recent grievance to his Complaint.  (Doc.  1, attach.  1).  In this grievance, Plaintiff complains about the medical care from Nurse Williams.  *Id.*

Finally, Plaintiff also brings claims he was held in unconstitutional conditions of confinement

-2-

as there was one inch of water on the floor at all times in his cell due to a leak from the toilet/sink area.  (Doc.  1, ¶ 13).  Plaintiff alleges anytime when he would leave his bunk, his feet would be covered with water.  *Id.*  Additionally, cells numbered one and two had an odor of urine and feces to which Plaintiff was exposed on a daily basis.  *Id.*

Specific to his Motion for Injunctive Relief, Plaintiff has alleged that on June 1, 2010, he was given a dark green and light green capsule of medication which he could not identify.  (Doc.  31).  Plaintiff states he inquired to Nurse Williams and she also could not tell him the contents of the capsule.  *Id.*  Plaintiff states he only is prescribed one medication currently, and that medication is Prilosec which comes in a gray and purple capsule.  *Id.*

Further, on June 6, 2010, Plaintiff was taken to seen Warden Turner in Turner's office regarding a grievance Plaintiff had filed regarding the June 1, 2010 medication, and also regarding being given the incorrect medication on June 24, 2010.  *Id.*  Nurse Williams was present, and during the meeting Warden Turner allegedly threatened to contact a friend of Turner's who worked with the Arkansas Department of Correction and have Plaintiff transferred to a unit in Calico Rock, Arkansas where the "Arian Brotherhood" is located.  *Id.*

Plaintiff also states that his life was threatened on July 23 and 29, 2010 by one of the inmates who attacked him on March 31, 2010.  (Doc.  1 at 1).  Plaintiff alleges he wrote grievances and request forms stating he has been threatened and has been exposed to danger due to his visitation days falling on the same day as those of the other inmate.  *Id.*  Plaintiff states nothing has been done, and that he fears he will loose his life due to poisoning by Nurse Williams, physical injury from the other inmate, or Warden Turner's threat.  *Id.*  Plaintiff also states his legal mail is opened upon arrival and he never receives correspondence from family members, and that grievances he wrote were not

received but were destroyed by Defendant Nash in retaliation.  *Id.*  Plaintiff requests relief in the form of being transferred to the Arkansas Department of Correction.  *Id.*  at 1-2.

## II.    APPLICABLE LAW

The two kinds of immediate injunctive relief are Preliminary Injunctions and Temporary Restraining Orders and they differ in several respects,[1] but the applications for each are generally measured against the same factors, which were established in *Dataphase Systems, Inc. v. C.L. Systems, Inc*., 640 F.2d 109, 113 (8th Cir. 1981)( en banc ).  The Court will consider: (1) the threat of irreparable harm to the movant; (2) the state of balance between the harm and the injury that granting the injunction will inflict on the other party litigants; (3) the probability that the movant will succeed on the merits; and (4) the public interest.  No single factor is dispositive, but the movant must establish a threat of irreparable harm.  *Id.*  Without a finding of irreparable injury, a preliminary injunction should not be issued.  *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*., 871 F.2d 734, 738 (8th Cir. 1989)(en banc).

In *Gof v. Harper*, 60 F.3d 518, 520-21 (8th Cir. 1995), the court addressed the district court's role in inmate applications for injunctive relief as follows:

> [I]n the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration . . . The courts should not

---

[1]  Rule 65 of the Federal Rules of Civil Procedure provides that "[n]o preliminary injunction shall be issued without notice to the adverse party," Fed.R.Civ.P. 65(a)(1), while a TRO "may be granted without written or oral notice to the adverse party or that party's attorney," but "only if" certain requirements are met. *See* FED.R.CIV.P. 65(b) (emphasis added). Thus, a TRO may be, but does not have to be, issued *ex parte*, but a preliminary injunction cannot be issued without notice to the adverse party. However, although a preliminary injunction cannot be issued without notice, the fact that notice is provided does not necessarily mean that the relief granted will be a preliminary injunction rather than a TRO. *See Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

get involved unless either a constitutional violation has already occurred or the threat
of such a violation is both real and immediate.

*Id.* Courts are further cautioned that, "injunctive force may be unleashed only against conditions
generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a
remote future injury, or a future invasion of rights, be those rights protected by statute or by the
common law." *Rogers v. Scurr*, 676 F.2d 1211,1214 (8th Cir. 1982) (quoting *Holiday Inns of Am.
v. B & B Corp.*, 409 F.2d 614, 618 (3rd Cir. 1969)).

### III.   DISCUSSION

#### A.   The Threat of Irreparable Harm to the Movant

Plaintiff has stated there is a possibility of injury to him from either: 1) taking the incorrect
medication given to him by Nurse Williams, 2) being transferred to the Arkansas Department of
Correction in Calico Rock, and/or 3) being injured by another inmate.  However, the threat of harm
from incorrect medication is not likely as Plaintiff infers he did not take the medication.  Plaintiff
appears to have refused the medication due to his uncertainty of its contents.  Accordingly, the chance
of irreparable harm, if any, is slight.  Plaintiff has made no indication that he was forced to take the
medication, would be forced to do so, or was to suffer any prejudice from not taking the medication.

The same is true for the alleged threat made by Warden Turner.  At the most, Plaintiff's
motion is against the possibility of a remote future injury and as such fails to meet the *Dataphase*
requirements.  Plaintiff has not alleged or indicated any move to the Arkansas Department of
Correction is pending, or that any move would include a transfer to the Calico Rock facility.  Even
if ultimately housed at Calico Rock, Plaintiff can not show being housed in the facility alone will cause
him injury.  Plaintiff can not meet his burden of showing immediate "irreparable injury, loss, or

damage."

Also regarding the threats by a fellow inmate, the same analysis applies. Plaintiff has not shown he is in any immediate danger by having recreation and visitation times with this inmate. In fact, Plaintiff indicates he has shared visitation times with the other inmate without incident. Furthermore, Plaintiff is again seeking an injunction from a speculative and remote possibility of future injury, rather than immediate injury.

As the Court finds Plaintiff fails to satisfy the first *Dataphase* factor of irreparable harm, the Court will not address the other factors.

**IV.     CONCLUSION**

Accordingly, **I RECOMMEND** the Motion for Injunction (doc. 31) be **DENIED**, for the forgoing reasons.

**The parties have fourteen (14) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **24th day of August 2010.**

/s/ Barry A. Bryant
BARRY A. BRYANT
U.S. MAGISTRATE JUDGE